## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSHUA L. HOSKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Cause No. 3:20-cv-00508-GCS |
| | ) |
| NATHAN CHAPMAN, | ) |
| JANA RUETER, and | ) |
| JEFFREY DENNISON, | ) |
| | ) |
| Defendants. | ) |

## <u>MEMORANDUM & ORDER</u>

**SISON, Magistrate Judge:**

Plaintiff Joshua L. Hoskins, proceeding *pro se*, brings an action under 42 U.S.C. § 1983 against Defendants Dr. Nathan Chapman and Jana Rueter.[1]  Hoskins claims that Defendants were deliberately indifferent to his serious medical needs and retaliated against him for filing grievances.  Before the Court is Hoskins's motion for an urgent preliminary injunction.  (Doc. 7).  For the reasons delineated, the Court **DENIES** Hoskins's motion.

### FACTUAL ALLEGATIONS

Joshua L. Hoskins is an inmate at Pinckneyville Correctional Center.  (Doc. 1, p. 43, ¶ 1).  On November 12, 2019, Hoskins had an appointment with Dr. Chapman, a dentist at the correctional center.  (Doc. 1, p. 43, ¶ 2-3).  According to Hoskins, he was suffering from infected gums and severe toothaches.  (Doc. 1, p. 43, ¶ 2).  Hoskins claims

---

[1]      On June 4, 2020, the Court added Jeffery Dennison in his official capacity to this suit in the event that injunctive relief is ordered.  (Doc. 8).

that during the appointment Dr. Chapman refused to put a filling in one of his teeth because Hoskins had filed a grievance against Dr. Chapman.  (Doc. 1, p. 43, ¶ 2).

Dr. Chapman responds by claiming that the purpose of the November 12, 2019 appointment was to clean and fill a cavity on one of Hoskins's teeth.  (Doc. 24, Exh. B, ¶ 4).  During the appointment, Dr. Chapman discovered a cavity on a different tooth that was only visible via x-ray.  (Doc. 24, Exh. B, ¶ 4).  Dr. Chapman alleges that the other cavity was a non-emergency and that time constraints prevented him from treating the second cavity during that appointment.  (Doc. 24, Exh. B, ¶ 4).

During the months of January through April, 2020, Hoskins claims he had several other appointments with Dr. Chapman.  (Doc. 1, p. 43, ¶ 3).  Hoskins alleges that Dr. Chapman refused to treat his infected gums and severe toothaches at these appointments.  (Doc. 1, p. 43, ¶ 3).  According to Hoskins, he complained about his dental issues to mental health staff members and grievance officers to no avail.  (Doc. 1, p. 43, ¶ 3).

In contrast, Dr. Chapman states that he did not hear from Hoskins again until March 20, 2020, when he received a copy of Hoskins's grievance about his dental care and infected gums.  (Doc. 24, Exh. B, ¶ 5).  During a March 31, 2020 appointment, Dr. Chapman claims he saw no swelling, pus, or other signs of gum infection.  (Doc. 24, Exh. B, ¶ 6).  He alleges that he observed a chip on one of Hoskins's teeth, but because of Covid-19 restrictions he was unable to smooth the tooth or to fill the cavity discovered at the previous appointment.  (Doc. 24, Exh. B, ¶ 6).  Based on his observations of Hoskins, Dr. Chapman claims that he found both dental issues to be non-emergencies, gave Hoskins a mouth guard to protect his teeth when he sleeps, and advised him to increase

his personal hygiene habits.  (Doc. 24, Exh. B, ¶ 6).  According to Dr. Chapman, he has never received any dental request slips from Hoskins since the March 31, 2020 appointment.  (Doc. 24, Exh. B, ¶ 7).  To support his allegations, Dr. Chapman presented Hoskins's dental records to this Court, which show his notes on the November 12, 2019 and March 31, 2020 appointments.  (Doc. 24, Exh. A).  The records do not reflect any dental appointments for Hoskins between November 12, 2019, and March 31, 2020.

On May 12, 2020, Hoskins alleges he encountered Jana Reuter, a nurse in the healthcare unit.  (Doc. 1, p. 43, ¶ 4).  According to Hoskins, Reuter explained to him that she had convinced Dr. Chapman to refuse to treat Hoskins's dental issues because Hoskins had complained about Dr. Chapman and Reuter to mental health and security staff members and had filed grievances against both of them.  (Doc. 1, p. 43, ¶ 4).

On June 1, 2020, Hoskins filed his complaint with this Court.  (Doc. 1).  Hoskins filed a motion for an urgent preliminary injunction on June 3, 2020.  (Doc. 7).  On August 17, 2020, this Court held a hearing on Hoskins's preliminary injunction motion.  (Doc. 44).  During the hearing, Hoskins admitted that his dental issues were improving by rinsing with salt water and taking pain medication procured from other inmates.  He noted, however, that he still had some gum bleeding by his lower left tooth.  He acknowledged that he was on a list to receive a filling.  Hoskins also stated that he has not purchased pain medication since March of 2020, nor has he asked for a soft food permit to help with chewing.  Hoskins asserted that he had not purchased pain medication because he prioritizes purchasing personal hygiene products and that he is unable to apply for a soft

food permit because an unrelated lawsuit prevents him from talking with healthcare staff.

## LEGAL STANDARDS

Injunctions are extraordinary equitable remedies that are to be granted in civil cases only when specific criteria are clearly met by the movant. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). The plaintiff must show four elements for an injunction: (1) plaintiff is likely to succeed on the merits; (2) without an injunction irreparable harm against the plaintiff is likely; (3) the harm likely to be suffered by the plaintiff would be greater than the harm the injunction would inflict on defendants; and (4) the injunction is in the public interest. *Id*. The greater the likelihood that the plaintiff will succeed on the merits of the case, the less significant the likely harm against the plaintiff must be in relation to the harm the defendant will likely suffer due to an injunction. *Id*.

In the context of prisoner litigation, there are further restrictions on the remedial power of the courts.  The scope of the court's authority to enter an injunction in the correctional context is circumscribed by the Prison Litigation Reform Act ("PLRA").  *See Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012).  Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm."  18 U.S.C. § 3626(a)(2).  *See also Westefer*, 682 F.3d at 683 (noting that the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions:  prison officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted).

The Seventh Circuit has described injunctions like the one sought here, where an injunction would require an affirmative act by a defendant, as a mandatory preliminary injunction. *See Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997). Mandatory injunctions are "cautiously viewed and sparingly issued," because they require the court to command a defendant to take a particular action. *Id.* (citing *Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978)). *See also W.A. Mack, Inc. v. Gen. Motors Corp.*, 260 F.2d 886, 890 (7th Cir. 1958)(stating that "[a] preliminary injunction does not issue which gives to a plaintiff the actual advantage which would be obtained in a final decree.").

## ANALYSIS

Hoskins requests that the Court direct Defendants to treat his dental problems. However, the Court finds that Hoskins has not presented sufficient evidence that he is likely to succeed on the merits of his First Amendment or Eighth Amendment claims. The Court further finds that Hoskins has not demonstrated that he is in danger of irreparable harm absent injunctive relief. Therefore, the Court denies Hoskins's request for a mandatory preliminary injunction.

In order to prevail on a claim of deliberate indifference, a prisoner who brings an Eighth Amendment challenge for constitutionally deficient medical care must satisfy a two-part test. *See Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). The first consideration is whether the prisoner has an "objectively serious medical condition." *Id.* at 750. *Accord Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Hammond v. Rector*, 123 F. Supp. 3d 1076,

1084 (S.D. Ill. 2015)(citing *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)).  It is not necessary for such a medical condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated."  *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).  *Accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994)(violating the Eighth Amendment requires "deliberate indifference to a *substantial* risk of *serious* harm")(internal quotation marks omitted) (emphasis added).

The second consideration requires a prisoner to show that a prison official has subjective knowledge of – and then disregards – an excessive risk to inmate health.  *See Greeno*, 414 F.3d at 653.  A plaintiff need not show the individual "literally ignored" his complaint, but that the individual was aware of the condition and either knowingly or recklessly disregarded it.  *See Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008).  However, "[s]omething more than negligence or even malpractice is required" to prove deliberate indifference.  *Pyles*, 771 F.3d at 409.  *See also Hammond*, 123 F. Supp. 3d at 1086 (noting that "isolated occurrences of deficient medical treatment are generally insufficient to establish . . . deliberate indifference.").  This is because deliberate indifference involves "intentional or reckless conduct, not mere negligence."  *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010)(citing *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010)).

Under a First Amendment retaliation claim, a plaintiff must show that  (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take

the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). "In the First Amendment context . . . a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).

Hoskins's testimony was not credible, and his likelihood of success on the merits is low. During the hearing, Hoskins showed no signs of being in debilitating pain, as he claimed. He spoke clearly and answered questions competently. At the time, he said that he was only experiencing some bleeding by his lower left tooth, which is far less severe than the bleeding, swollen, pus-filled gums he complains of in his complaint. Thus, it is unlikely that he is suffering from a serious medical condition necessary to support a claim under the Eighth Amendment. Moreover, Hoskins's claim that Dr. Chapman refused to provide dental care because Hoskins filed a grievance against him is at odds with Dr. Chapman's willingness to fill in a cavity for Hoskins and to provide him with a mouth guard at Hoskins's appointments. There is insufficient evidence that Dr. Chapman was acting with deliberate indifference or that he was trying to retaliate against Hoskins for filing grievances. At this point in the litigation, Hoskins's only evidence are his allegations, which lack credibility given the other evidence before the Court, namely Dr. Chapman's affidavit and Hoskins's dental records. Given the lack of evidence, which is contradicted by Hoskins's appearance at the hearing and Defendants' evidence, Hoskins's likelihood of success on the merits is low.

Second, this Court finds that irreparable harm to Hoskins is unlikely. Again, Hoskins did not appear to be in severe pain at the hearing. Hoskins candidly admitted

that his dental condition was improving through self-care and that he was only suffering from some bleeding by his lower left tooth. Furthermore, Hoskins has not been purchasing pain medication from the prison commissary. Although Hoskins claims that he does not purchase pain medication because he prioritizes purchasing hygiene products, that choice is not typical for a person who claims to be in such severe pain. Moreover, it is not reasonable to prioritize hygiene products over pain medication given Hoskins's testimony that he could be cited for disciplinary violations for using pain medication issued to another inmate.

Hoskins admits that he is on the list for dental care after Pinckneyville's COVID-19-related prohibition on non-emergency dental treatment is lifted. He does not establish credibly that he faces a dental emergency that warrants the Court taking the extraordinary measure of entering a mandatory preliminary injunction, and the relief he requests is too broad under the immediate circumstances. Further, granting the relief Hoskins requests poses a risk to Defendants due to COVID-19's manner of transmission. Without any credible evidence of a serious medical condition that is being met with deliberate indifference by Defendants or that Defendants are retaliating against Hoskins in any way, there is no basis to order injunctive relief at this time.

### CONCLUSION

For the above-stated reasons, this Court **DENIES** Hoskins's motion for an urgent preliminary injunction (Doc. 7). The Court **FINDS as moot** Hoskins's motion to supplement his urgent preliminary injunction motion (Doc. 45), as it does not meaningfully impact the evidence or the Court's decision herein.

**IT IS SO ORDERED.**

Dated: **August 27, 2020.**

Digitally signed
by Judge Sison 2
Date: 2020.08.27
13:30:21 -05'00'

_____
GILBERT C. SISON
United States Magistrate Judge