UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSHUA LEE HOSKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No. 3:20-cv-00508-GCS |
| NATHAN CHAPMAN, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

Plaintiff Joshua L. Hoskins is currently in the custody of the Illinois Department of Corrections ("IDOC") and incarcerated at Dixon Correctional Center. (Doc. 106, p. 2). Hoskins proceeds *pro se*. On June 1, 2020, Hoskins filed suit against Defendant Chapman pursuant to 42 U.S.C. § 1983 for claims arising from his medical care while incarcerated at Pinckneyville Correctional Center ("Pinckneyville"). (Doc. 1). In his complaint, Hoskins alleges that Defendant Chapman, a dentist, was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment when he failed to timely fill one of Hoskins's cavities. (Doc. 48, p. 1-2). Hoskins also claims that Defendant delayed filling his cavity in retaliation for Hoskins filing grievances about Defendant's medical care. *Id*. Now before the Court is Defendant's motion for summary judgment. (Doc. 105). For the reasons delineated below, the motion for summary judgment is **GRANTED.**

## Factual Allegations

Hoskins first reported developing cavities while he was incarcerated at Stateville Correctional Center ("Stateville"). (Doc. 106, p. 2). Though the Stateville dentist was able to fill one of Hoskins's cavities, he was not able to fill a cavity on tooth thirteen before Hoskins was transferred to Pinckneyville on June 5, 2019. *Id*. Hoskins did not complain to healthcare staff of pain in his teeth or other dental issues until September 2019. *Id*. at p. 3.

On September 27, 2019, Hoskins made a nurse sick call for medical treatment after he was struck in the jaw. (Doc. 106, p. 3). Hoskins saw Defendant Chapman on referral for treatment to his jaw on October 3, 2019. *Id*. During the visit, Defendant Chapman noted that Hoskins was able to talk normally. *Id.* Hoskins also did not appear to be in distress and did not grimace when physically examined. *Id*. Nevertheless, Defendant Chapman ordered an x-ray of Hoskins's jaw and provided him with a mouth guard. *Id*. The x-ray did not reveal any fractures or dislocations to Hoskins's jaw; however, Defendant Chapman scheduled Hoskins for a filling for tooth thirteen on October 22, 2019. *Id*.

On November 12, 2019, Defendant Chapman provided a filling for Hoskins's tooth thirteen. (Doc. 106, p. 4). At that time, Defendant found that Hoskins also had a cavity in tooth nineteen. *Id.* However, this cavity was visible only on an x-ray. *Id.* Hoskins did not report pain in connection with the cavity, so Defendant did not find an emergent need to fill the tooth. *Id*. Instead, Defendant placed Hoskins on a waiting list for a filling and

advised him to use floss to clean his teeth. *Id*. During November 2019, Defendant saw approximately 278 patients for dental services. *Id*.

On June 24, 2019, Hoskins filed a grievance stating that he had dental pain, but security staff intercepted his requests to see the medical unit. (Doc. 106, p. 16). Hoskins again filed a grievance on July 30, 2019, stating that he had dental pain because he was not allowed toothbrushes and toothpaste by security staff. *Id*. On August 19, 2019, Hoskins filed a grievance again alleging that security staff would not provide a toothbrush or toothpaste. *Id*. at p. 17. He filed additional grievances requesting dental care on February 24 and March 16, 2020. *Id*. at p. 17 n.5.

On March 20, 2020, the dental unit received a copy of one of Hoskins's grievances regarding his dental care. (Doc. 106, p. 4). Defendant Chapman noted that he received no contact from Hoskins since his November 12, 2019 appointment and that Hoskins made no nurse sick calls about his dental complaints. *Id*. However, Defendant still scheduled Hoskins for a dentist appointment shortly thereafter. *Id*.

Hoskins next saw Defendant for a dentist appointment on March 31, 2020. (Doc. 106, p. 5). When Defendant examined Hoskins, he found no swelling, bleeding, pus or other signs of infection in his gums. *Id*. Hoskins did have a small incisal chip on tooth twenty-two; however, Defendant was unable to repair the chip because the IDOC had prohibited non-emergent dental interventions as a COVID-19 precautionary measure. *Id*. Defendant was also unable to provide a filling for tooth nineteen, as the cavity on this tooth was deemed non-emergent. *Id*.

Hoskins did not report pain or distress during his March 31, 2020 appointment with Defendant, nor did there appear to be damage to the nerve root of tooth nineteen which would have caused such pain. (Doc. 106, p. 5). After Hoskins was transferred to Dixon Correctional Center in 2021, he saw a new dentist. *Id*. at p. 6. However, Hoskins did not request pain medication for his yet un-filled cavity. *Id*. The IDOC maintained the restrictions on non-emergent dentistry through May 2021. *Id.* Hoskins had not received a filling for his tooth as of his May 3, 2021 deposition. *Id*.

## LEGAL STANDARDS

Summary judgment is proper when the pleadings and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(c); *Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The movant bears the burden of establishing the absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law. *See Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)(citing *Celotex*, 477 U.S. at 323). This Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *See Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). *See also Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009)(stating that "we are not required to draw every conceivable inference from the record . . . we draw only reasonable inferences") (internal citations omitted). Summary judgment is also appropriate if a plaintiff cannot make a showing of an essential element of his claim. *See Celotex*, 477 U.S. at 322. While

the Court may not "weigh evidence or engage in fact-finding[,]" it must determine if a genuine issue remains for trial. *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations in his pleadings; rather, he must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. *See Walker v. Shansky*, 28 F.3d 666, 670–671 (7th Cir. 1994), aff'd, 51 F.3d 276 (citing *Celotex*, 477 U.S. at 324). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250 (citations omitted). *Accord Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996); *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994). In other words, "inferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009) (internal citation omitted). *See also Anderson*, 477 U.S. at 252 (finding that "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]"). Instead, the non-moving party must present "definite, competent evidence to rebut the [summary judgment] motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000) (internal citation omitted).

## ANALYSIS

I. **Whether Defendant Chapman was Deliberately Indifferent to Hoskins's Serious Medical Needs**

    a. **Whether Hoskins's Tooth Pain Constitutes an Objectively Serious Medical Need**

A prisoner seeking to establish that the medical care he received in prison was so insufficient as to violate his Eighth Amendment rights must prove that: (1) he had an objectively serious medical need, and (2) the defendant prison official was deliberately indifferent to that need. *See Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). *See also Greeno v. Daley*, 414 F.3d 645, 652-653 (7th Cir. 2005); *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996); *Thomas v. Walton*, 461 F.Supp.2d 786, 793 (S.D. Ill. 2006). In order to find that a defendant was deliberately indifferent, there must be a condition that required treatment, knowledge on the part of the health care provider of an excessive risk to health or safety, and a decision to disregard that risk. *See Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994)(citing *Farmer v. Brennan*, 511 U.S. 825 (1994)). Defendants first assert that Hoskins's right tooth pain is not a serious medical need for the purposes of an Eighth Amendment claim for deliberate indifference, thus challenging the first prong of the test. (Doc. 91, p. 8). Because the Court finds that Hoskins's tooth pain and cavity do not constitute an objectively serious medical need, the motion for summary judgement is granted.

    A medical condition is objectively serious if a physician has determined that treatment is mandated, or if it is "so obvious that even a lay person would easily

recognize the necessity for a doctor's attention." *Johnson v. Snyder*, 444 F.3d 579, 584-585 (7th Cir. 2006)(citing *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)), overruled on other grounds in *Hill v. Tangherlini*, 724 F.3d 965, 968 n.1 (7th Cir. 2013). An objectively serious condition results if "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain[.]" *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Not all medical conditions are sufficiently serious to implicate the Eighth Amendment; the failure to dispense medicine for "minor aches and pains" does not violate the Constitution. *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996). For example, in *Knox v. Walter*, the plaintiff alleged that he sustained injuries during a shakedown of his cell house, including cuts to his wrist, pain and swelling in his neck and shoulders, and feelings of lightheadedness. No. 20-3344, 2022 WL 61432, at *1 (7th Cir. Jan. 6, 2022). However, when the defendant nurse saw the plaintiff, she found no swelling, weakness, or numbness. *Id.* The district court found that the plaintiff's superficial cuts and dizziness were not objectively serious, though his claims of severe pain left a question of material fact for the jury. *See Knox v. Butler*, Case No. 17-cv-494-SMY, 2020 WL 6701148, at *2 (S.D. Ill. Nov. 13, 2020). The Seventh Circuit upheld this finding on appeal. *Walter*, 2022 WL 61432, at *1.

In contrast, withholding pain medication from a patient with cancer, ignoring unmedicated epilepsy, and leaving untreated an infected cyst which caused excruciating pain have each been considered sufficiently serious to support a claim for deliberate indifference. *See Ralston v. McGovern*, 167 F.3d 1160, 1161-62 (7th Cir. 1999); *Hudson v. McHugh*, 148 F.3d 859, 863 (7th Cir. 1998); *Gutierrez*, 111 F.3d at 1373. Chronic pain can

also constitute an objectively serious medical condition when a reasonable doctor or patient would find that pain important and worthy of treatment, or when it interferes with the plaintiff's daily activities. *See Gutierrez*, 111 F.3d at 1373 (internal citations omitted). A plaintiff's own reports of terrible pain may create a genuine question as to whether a condition was objectively serious. *Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 521 (7th Cir. 2019).

Hoskins's complaints of pain from his cavity on tooth nineteen are more similar to the minor aches and pains in *Cooper* than the chronic pain considered in *Gutierrez*. After a hearing on Hoskins's motion for a preliminary injunction to require emergency dental care, the Court noted that Hoskins showed no signs of debilitating pain. (Doc. 48, p. 7). To the contrary, Hoskins testified that his only symptom was minor bleeding by tooth nineteen. *Id*. Furthermore, when Defendant examined Hoskins during the October 3, 2019 visit, Defendant noted that Hoskins did not grimace when his jaw was physically examined. (Doc. 106, p. 10). Defendant again noted that Hoskins had no pain in connection with tooth nineteen during the November 12, 2019 visit. *Id*. Hoskins had no swelling in his jaw or around tooth nineteen and did not have blood or pus in his mouth at that time. *Id*. at p. 10-11. When Defendant examined Hoskins on March 31, 2020, Defendant again found no swelling, bleeding, pus, or other signs of infection in Hoskins's gums or around tooth nineteen. *Id*. at p. 10. Finally, even after Hoskins was transferred to Dixon and saw a different dentist, Hoskins did not request pain medication from that dentist. *Id*. at p. 11. This lack of action demonstrates that Hoskins did not face substantial

pain from his cavity in tooth nineteen, thus indicating that this was not an objectively serious medical need.

Hoskins makes three arguments in support of finding that his pain constitutes an objectively serious medical need. First, Hoskins responds that he complained to other health staff about his dental pain, but that staff did not note his pain in the medical records. (Doc. 121, p. 1). A February 3, 2021 memorandum from Defendant to Hoskins's grievance counselor does inform Hoskins that he may purchase sensitive toothpaste from the commissary and that Defendant issued Hoskins a prescription for 500 milligrams of Tylenol for seven days. (Doc. 121, Exh. N, p. 19). However, while this evidence does support finding that Hoskins complained of pain, it does not show that Hoskins's pain was so severe as to constitute an objectively serious medical need. Even if Hoskins experienced some pain from his cavity on tooth nineteen, Hoskins's sporadic requests for pain medication indicate that the pain amounts to minor aches, rather than severe or chronic pain. Hoskins himself testified that he experienced only minor bleeding, and there is no evidence that his pain prevented him from eating or otherwise interfered in his daily life.

Second, Hoskins states in his deposition that he was not able to chew using the side of his mouth on which he had a cavity. However, when asked what he could not eat, Hoskins said that the foods aggravating his cavity were ice chips, Jolly Rancher hard candy, and hard cereals. (Doc. 106, Exh. A, 156:10-23). This minor limitation does not sufficiently interfere in Hoskins's daily activities to constitute a severe medical condition.

Lastly, Hoskins also explains that his pain could be so debilitating that it would prevent him from being able to do push-ups or from lifting boxes, interfering in his daily exercise. (Doc. 106, Exh. A, 158:20-24, 159:1-14). However, he also states that he is "not saying [he is] so weak that [he] can't pick up something." *Id*. at 159:19-22. Although Hoskins states that exercise would aggravate his cavity, he also points out that this aggravation was not so severe as to prevent him from being able to conduct his daily activities. Accordingly, Hoskins's cavity does not constitute an objectively serious medical need, and the motion for summary judgement is granted on Count I.

### b. Whether Defendant Chapman was Deliberately Indifferent to Hoskins's Serious Medical Needs

Assuming, *arguendo*, that Hoskins's cavity and tooth pain constitute an objectively serious medical need, the Court next turns to consider the second prong, *i.e.*, whether the defendant prison official was deliberately indifferent to a serious medical need. *See Arnett*, 658 F.3d at 750. In order to be deliberately indifferent to an objectively serious medical need, a defendant must know of and disregard an excessive risk to the plaintiff's health. *See Greeno*, 414 F.3d at 653. The defendant prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837-838 (1994). Moreover, "[d]eliberate indifference implies at a minimum actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent harm can be inferred from the defendant's failure to prevent it." *Thomas*, 461 F. Supp. 2d at 793 (citing *Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir. 1985), abrogated on other grounds

by *Haley v. Gross*, 86 F.3d 630, 645 n.34 (7th Cir. 1996)). Deliberate indifference is more than negligence; instead, the proper standard "approaches intentional wrongdoing." *Johnson*, 444 F.3d at 585. *See also Rosario v. Brown*, 670 F.3d 816, 821-822 (7th Cir. 2012)(requiring a plaintiff show defendants had near "total unconcern" for the plaintiff's welfare). Accordingly, the failure to alleviate a risk officials should have perceived, but did not, is not a violation of the Eighth Amendment. *See Farmer*, 511 U.S. at 826.

Delays in treating painful medical conditions may support a claim under the Eighth Amendment even when the underlying condition for which treatment is sought is not life-threatening. *See Gutierrez*, 111 F.3d at 1374. An inexplicable delay in treatment which serves no penological interest may support an inference that prison officials were deliberately indifferent to an inmate's serious medical needs. *See Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016)(citing *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008)). *See also Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007)(holding that defendants were deliberately indifferent when they denied the plaintiff treatment for his dislocated finger for two days). When determining whether a delay indicates deliberate indifference, courts consider the seriousness of the condition for which treatment is delayed and the ease of providing treatment for that condition. *Id.* Furthermore, in order to predicate an Eighth Amendment claim on a delay in treatment, a plaintiff must show that the delay exacerbated the injury or unnecessarily prolonged pain. *See Williams v. Liefer*, 491 F.3d 710, 716 (7th Cir. 2007).

A significant delay in treatment clearly supports finding deliberate indifference when the materials for treatment are widely available and easily obtainable. *See, e.g.*,

*Miller v. Campanella*, 794 F.3d 878, 880 (7th Cir. 2015)(finding that the defendants' delay in providing the plaintiff with over-the-counter pills to treat gastro-esophageal reflux disease for two months demonstrated deliberate indifference). Even a short delay may be indicative of deliberate indifference when an inmate's condition causes considerable pain. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). For example, in *Rodriguez*, prison staff incorrectly administered an intravenous line in the plaintiff's arm. *Id*. at 819-820. During the plaintiff's four-day hospital stay, staff treated plaintiff's resulting pain by pushing the intravenous line further into the plaintiff's arm and providing him with an ice pack. *Id*. at 832. As a result of the delay in treatment, the plaintiff developed a serious and contagious infection. *Id*. The Seventh Circuit found that, given the alleged facts, the plaintiff sufficiently stated a claim under the Eighth Amendment to survive a motion to dismiss. *Id*. In contrast, a similar delay for a less painful condition may be tolerated under the Eighth Amendment. *See, e.g.*, *Gutierrez*, 111 F.3d at 1374 (finding that the plaintiff could not survive summary judgment when officials delayed treating a mild cyst infection for six days).

Courts recognize that "delays are common in a prison setting with limited resources[.]" *Petties*, 836 F.3d at 730. Prison officials, however, must provide treatment sufficient to meet the "civilized minimum of public concern for the health of prisoners." *Ralston*, 167 F.3d at 1162. This civilized minimum is "a function of both objective need and of cost." *Id*. When the cost of providing treatment is low, the failure to do so is especially indicative of deliberate indifference. *See Id.* For instance, in *Gil v. Reed*, the defendant denied the plaintiff his pain medication, although that medication had been

prescribed and dispensed before the plaintiff requested it. 381 F.3d 649, 662 (7th Cir. 2004). The prescribed antibiotic was necessary to treat a severe infection; though the plaintiff obtained the medication the following day, the Seventh Circuit found the delay demonstrated deliberate indifference. *Id*. Similarly, in *Wynn v. Southward*, the plaintiff repeatedly informed prison officials that he needed his heart medication "immediately" in order address a heart flutter and substantial chest pains. 251 F.3d 588, 594 (7th Cir. 2001). Citing to *Ralston*, 167 F.3d at 1162, the Seventh Circuit noted that the defendants' delay in providing the plaintiff's necessary heart medication supported a claim for deliberate indifference under the Eighth Amendment. *Id*.

Hoskins alleges that Defendant Chapman was deliberately indifferent to his cavity and tooth pain because Defendant Chapman failed to timely treat Hoskins's cavity with a filling between September 27, 2019, when Hoskins first complained of his cavity, and when Hoskins received treatment for his cavity at Dixon in 2021. *See* (Doc. 121, p. 2). This lack of treatment apparently left Hoskins in substantial pain until dentistry professionals at Dixon filled his cavity. *Id*. Accordingly, Hoskins claims that Defendant Chapman's delay in treatment exacerbated his pain.

In response, Defendant Chapman points out that he regularly took action to alleviate Hoskins's complaints of tooth pain when he saw Hoskins for treatment. (Doc. 106, p. 12). For example, when Hoskins saw Defendant Chapman on October 3, 2019, Defendant Chapman ordered Hoskins a mouth guard to alleviate his pain and ordered an x-ray of his jaw. *Id*. On November 12, 2019, Defendant Chapman found that Hoskins had a cavity in tooth nineteen, but informed him that the cavity was only visible from the

x-ray, indicating that it would not cause significant pain. *Id*. Defendant Chapman then exercised his medical judgment to place Hoskins on the waiting list for a filling. *Id*. However, as the waiting list for dental treatment was full during November 2019, with Defendant Chapman seeing approximately fifteen to sixteen inmates per day for treatment, Defendant Chapman was not able to fill Hoskins's cavity immediately. *Id*. at p. 13, n.2. Defendant Chapman's ability to quickly treat Hoskins's cavity was further limited by the imposition of COVID-19 precautionary measures; when Defendant Chapman saw Hoskins in March 2020, he was not able to treat Hoskins's cavity per the safety regulations in place at the time because Hoskins did not appear to have symptoms severe enough to constitute an emergency. *Id*. at p. 12.

In order to succeed on a claim for deliberate indifference to a serious medical need against a physician, a plaintiff must show that the defendant-physician's decision was "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate the person responsible did not base the decision on such judgment." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). Even evidence that at least some medical professionals would have chosen to pursue a different course of treatment is, standing alone, insufficient for a claim to survive summary judgment proceedings. *See Steele v. Choi*, 82 F.3d 175, 179 (7th Cir. 1996). Because a physician's treatment decisions are necessarily predicated on each individual patient's symptoms and medical necessities, delineating between acceptable differences of opinion and deliberate indifference often escapes a bright line analysis. *See Petties*, 836 F.3d at 729. The few instances in which courts do approach a bright line analysis includes when a physician

ignores a specialist's recommendations, *see Arnett*, 658 F.3d at 753; when a physician fails to follow existing protocol, *see Petties*, 836 F.3d at 729 (citing *Mata v. Saiz*, 427 F.3d 745, 757 (10th Cir. 2005)); and when a physician chooses an easier course of treatment even when that treatment is less effective than other available options. *See Walker v. Peters*, 233 F.3d 494, 498 (7th Cir. 2000). Inherent to each of these situations is the defendant physician's ability to make a decision impacting the plaintiff's medical treatment and care. *Cf. Perez v. Fenoglio*, 792 F.3d 768, 779 (7th Cir. 2015)(acknowledging that showing "someone else was responsible" could support granting summary judgment after discovery); *Walker v. Benjamin*, 293 F.3d 1030, 1038 (7th Cir. 2002)(upholding a decision granting summary judgment when the plaintiff failed to show that delay between the initial visit, diagnosis and specialist's treatment were within the defendant physician's control).

Hoskins can demonstrate neither that Defendant Chapman's delay in filling Hoskins's cavity constituted a substantial departure from accepted medical judgment nor that Defendant Chapman had the ability to make a different decision for Hoskins's medical treatment and care. Although dentists at Dixon may have provided Hoskins with a filling for his cavity, this treatment does not indicate that Defendant Chapman failed to exercise medical judgment when he found that Hoskins's tooth showed no sign of infection during his March 31, 2020 meeting with Hoskins. To the contrary, Defendant Chapman's diagnosis is consistent with Hoskins's own reports that he was not suffering pain at that time. Furthermore, there is no evidence that Defendant Chapman was responsible for the delay in Hoskins's treatment. Defendant Chapman was not able to

treat Hoskins because COVID-19 procedures at Pinckneyville prevented Defendant Chapman from providing non-emergent dental care; once Defendant Chapman determined that Hoskins's cavity did not constitute an emergency, he had no choice other than to delay Hoskins's medical treatment either until it presented an emergency or the regulations were lifted. As the delay in Hoskins's treatment was not Defendant Chapman's responsibility, the Court finds that Defendant Chapman was not deliberately indifferent to Hoskins's serious medical needs, and summary judgment is granted as to Count I on this ground as well.

## II.     Whether Defendant Chapman Retaliated Against Hoskins for Filing Grievances Against Him

In order to survive summary judgment on a First Amendment retaliation claim, a plaintiff must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future;" and (3) a causal connection between the two. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citation omitted). In the prison context, where an inmate is alleging retaliation, the inmate must identify the reasons for the retaliation as well as the acts claimed to have constituted retaliation; this puts those charged with retaliation on notice of the claims. *See Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). In a First Amendment retaliation claim, a plaintiff must show that his protected activity was the reason the defendant took an action against him. *See Waters v. City of Chicago*, 580 F.3d 575, 584 (7th Cir. 2009) (internal quotations omitted). At the summary judgment stage, a plaintiff has the burden of producing evidence that his speech was at least a motivating factor for a

defendant's retaliatory action; the burden then shifts to the defendant to rebut any causal inference raised by the plaintiff's evidence. *See Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012).

The plaintiff's burden of proof is low; nevertheless, the plaintiff must show that the injury or adverse action against him would deter a person of ordinary resolve from exercising his or her right to free speech. *See Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982). Harassment or other retaliatory actions which are unlikely to deter a person of ordinary firmness from exercising his or her right to free speech are not actionable. *Id.* Prisoners have a First Amendment right to make grievances about their conditions of confinement. *See Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010). However, to state a claim for retaliation, a plaintiff's complaint must set forth a "chronology of events from which retaliation may plausibly be inferred." *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000)(quoting *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988)).

Hoskins's filing of grievances against Defendant Chapman is protected activity under the First Amendment, meeting the first prong of the retaliation test. However, Hoskins fails to satisfy the third prong of showing a causal connection. Hoskins claims that Defendant Chapman retaliated against him by declining to treat his cavity between June 2019 and March 2020. (Doc. 121, p. 4). The IDOC did not institute COVID-19 restrictions on dentistry in its correctional centers until March 2020. *Id.* Hoskins asserts that Defendant could have treated his tooth within that time frame had he not delayed medical care in retaliation for Hoskins's grievances. *Id.* However, based on Hoskins's chronology of events, an inference of retaliation cannot plausibly be drawn. In his

deposition, Hoskins testified that the only grievance that he could point to that was sent to the Dental Unit was a grievance that he wrote in August 2019. (Doc. 106-1, p. 134). However, Hoskins did not name Defendant Chapman nor was it directly addressed to Defendant Chapman. *Id.* Hoskins additionally testified that he was referred to Defendant Chapman by another doctor and saw Defendant Chapman on October 3, 2019. (Doc. 106-1, p. 107). Hoskins noted that he brought up his dental issues with Defendant Chapman at that time. *Id.* at p. 106. According to Hoskins, Defendant Chapman responded that he was not going to address his dental concerns and was going to make Hoskins wait for care because of all the grievances he had been filing. *Id.* at p. 109, 111. Nevertheless, Hoskins concedes that Defendant Chapman gave him a mouth guard on that date. *Id.* at p. 107-108. Hoskins further concedes that he received a filling for a tooth different from the one at issue on November 12, 2019. *Id.* at p. 111-112. This treatment indicates that Hoskins did not suffer a deprivation or other retaliatory injury as a result of him filing grievances.[1] As Hoskins continued to receive dental treatment despite the fact that he had apparently filed numerous grievances, the Court finds that a causal connection cannot be shown. Accordingly, summary judgment is granted with respect to Count II.

---

[1] Defendant Chapman asserts that because Hoskins continued to file grievances regarding his dental care, an ordinary person would not be deterred from such conduct. (Doc. 106, p. 15). However, the standard under which the Court considers whether an ordinary person would be deterred from engaging in activity protected under the First Amendment is an objective one. *See Holleman v. Zatecky*, 951 F.3d 873, 880 (7th Cir. 2020). A specific plaintiff's persistence therefore does not undermine his claim. *See Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020). In any event, because the Court finds that Hoskins cannot show a causal connection, the Court does not need to address the second prong of the retaliation test.

CONCLUSION

For these reasons, the Court **GRANTS** Defendant's motion for summary judgment. (Doc. 105). The Court **DIRECTS** the Clerk of the Court to enter judgment in Defendant's favor with prejudice and to close the case.

**IT IS SO ORDERED.**

**DATED: February 24, 2022.**

Digitally signed by
Judge Sison 2
Date: 2022.02.24
12:19:47 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**