UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSHUA LEE HOSKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No. 3:20-cv-00508-GCS |
| NATHAN CHAPMAN, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

Plaintiff Joshua L. Hoskins is currently in the custody of the Illinois Department of Corrections ("IDOC") and incarcerated at Dixon Correctional Center. (Doc. 106, p. 2). Hoskins proceeds *pro se*. On June 1, 2020, Hoskins filed suit against Defendant Chapman pursuant to 42 U.S.C. § 1983 for claims arising from his medical care while incarcerated at Pinckneyville Correctional Center ("Pinckneyville"). (Doc. 1). In his complaint, Hoskins alleges that Defendant Chapman, a dentist, was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment when he failed to timely fill one of Hoskins's cavities. (Doc. 48, p. 1-2). Hoskins also claims that Defendant delayed filling his cavity in retaliation for Hoskins filing grievances about Defendant's medical care. *Id*. On February 24, 2022, the Court granted summary judgment in favor of Defendant Chapman and against Hoskins, and Judgment reflecting the same was entered the next day. (Doc. 144, 145).

Now pending before the Court is Hoskins's motion for reconsideration, (Doc. 148), his motion for the Court to provide information regarding an appeal, (Doc. 149), his supplemental motion for reconsideration, (Doc. 151), his second supplemental motion for reconsideration, (Doc. 153), his motion for the Court to Consider, (Doc. 154), and his motion for the Court to Provide and Advise. (Doc. 156). For the reasons delineated below, each of these motions is **DENIED**.

### FACTUAL BACKGROUND

Hoskins first reported developing cavities while he was incarcerated at Stateville Correctional Center ("Stateville"). (Doc. 106, p. 2). Though the Stateville dentist was able to fill one of Hoskins's cavities, he was not able to fill a cavity on tooth thirteen before Hoskins was transferred to Pinckneyville on June 5, 2019. *Id*. After his transfer from Stateville to Pinckneyville, Hoskins complained of dental pain and cavities. *Id*. at p. 16.

On June 24, 2019, Hoskins filed a grievance stating that he had dental pain, but security staff intercepted his requests to see the medical unit. (Doc. 106, p. 16). Hoskins again filed a grievance on July 30, 2019, stating that he had dental pain because he was not allowed toothbrushes and toothpaste by security staff. *Id*. On August 19, 2019, Hoskins filed a grievance again alleging that security staff would not provide a toothbrush or toothpaste. *Id*. at p. 17.

On September 27, 2019, Hoskins requested a nurse sick call for medical treatment after he was struck in the jaw. (Doc. 106, p. 3). Hoskins saw Defendant Chapman on referral for treatment to his jaw on October 3, 2019. *Id*. During the visit, Defendant

Chapman noted that Hoskins was able to talk normally. *Id.* Hoskins also did not appear to be in distress and did not grimace when physically examined. *Id.* Nevertheless, Defendant Chapman ordered an x-ray of Hoskins's jaw and provided him with a mouth guard. *Id.* The x-ray did not reveal any fractures or dislocations to Hoskins's jaw; however, Defendant Chapman scheduled Hoskins for a filling for tooth thirteen on October 22, 2019. *Id.*

On November 12, 2019, Defendant Chapman provided a filling for Hoskins's tooth thirteen. (Doc. 106, p. 4). At that time, Defendant found that Hoskins also had a cavity in tooth nineteen. *Id.* However, this cavity was visible only on an x-ray. *Id.* Hoskins did not report pain in connection with the cavity, so Defendant did not find an emergent need to fill the tooth. *Id.* Instead, Defendant placed Hoskins on a waiting list for a filling and advised him to use floss to clean his teeth. *Id.* During November 2019, Defendant saw approximately 278 patients for dental services. *Id.*

Hoskins filed additional grievances requesting dental care on February 24 and March 16, 2020. (Doc. 106 at p. 17 n.5). On March 20, 2020, the dental unit received a copy of one of Hoskins's grievances regarding his dental care. *Id.* at p. 4. Defendant Chapman noted that he received no contact from Hoskins since his November 12, 2019 appointment and that Hoskins requested no nurse sick calls about his dental complaints. *Id.* However, Defendant still scheduled Hoskins for a dentist appointment shortly thereafter. *Id.*

Hoskins next saw Defendant for a dentist appointment on March 31, 2020. (Doc. 106, p. 5). When Defendant examined Hoskins, he found no swelling, bleeding, pus or other signs of infection in his gums. *Id.* Hoskins did have a small incisal chip on tooth

twenty-two; however, Defendant was unable to repair the chip because the IDOC had prohibited non-emergent dental interventions as a COVID-19 precautionary measure. *Id*. Defendant was also unable to provide a filling for tooth nineteen, as the cavity on this tooth was deemed non-emergent. *Id*.

Hoskins did not report pain or distress during his March 31, 2020 appointment with Defendant, nor did there appear to be damage to the nerve root of tooth nineteen which would have caused such pain. (Doc. 106, p. 5). After Hoskins was transferred to Dixon Correctional Center in 2021, he saw a new dentist. *Id*. at p. 6. However, Hoskins did not request pain medication for his yet un-filled cavity. *Id*. The IDOC maintained the restrictions on non-emergent dentistry through May 2021. *Id.* Hoskins had not received a filling for his tooth as of his May 3, 2021 deposition. *Id*.

The Court granted summary judgment in favor of Defendant Chapman on February 24, 2022. (Doc. 144). Hoskins filed the present motion for reconsideration on March 7, 2022. (Doc. 148). Without waiting for Defendant Chapman to respond, Hoskins also filed three supplements to his motion for reconsideration on March 7, 2022; March 15, 2022; and March 16, 2022. (Doc. 151, 153, 154). The first of these supplements contains an August 29, 2019 grievance, in which Plaintiff alleges that he has not been allowed to buy toothbrushes or toothpaste from the commissary. (Doc. 151, p. 4). The second supplement contains the Pinckneyville administration's and the Administrative Review Board's ("ARB") responses to the grievance. (Doc. 153, p. 3-5). The ARB noted that Hoskins last received dental care as of November 12, 2019, making this issue moot. *Id*. at p. 3. That response was dated January 30, 2020. *Id*. Finally, in his third supplement,

Hoskins explains that he was initially referred to Dr. Myers on October 3, 2019, who then referred him to Defendant Chapman. (Doc. 154). In doing so, Dr. Myers reported Hoskins's statements that it hurt when he chewed. *Id*. Hoskins fails to explain either why he did not present these grievances with his initial response to Defendant Chapman's motion for summary judgment or why he did not make his argument regarding Dr. Myers in his response.

## LEGAL STANDARDS

Courts consider motions challenging the merits of a district court order as filed pursuant to either Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure. *See Mares v. Busby*, 34 F.3d 533, 535 (7th Cir. 1994). Rule 59(e) authorizes relief only in "exceptional cases" and permits a court to amend an order or judgment only if the movant demonstrates a manifest error of law or fact, or if the movant presents newly discovered evidence that was not previously available. *Willis v. Dart*, No. 16-1498, 671 Fed. Appx. 376, 377 (7th Cir. Dec. 9, 2016)(quoting *Gonzalez–Koeneke v. West.*, 791 F.3d 801, 807 (7th Cir. 2015)); *Heyde v. Pittenger*, 633 F.3d 512, 521 (7th Cir. 2011); *see also Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 511-512 (7th Cir. 2007). Movants must file a Rule 59(e) motion within twenty-eight days of the order.[1]

Relief under Rule 60(b) is also "an extraordinary remedy that is to be granted only in exceptional circumstances." *Willis*, 671 Fed. Appx. at 377 (quoting *Provident Sav. Bank v. Popovich*, 71 F.3d 696, 698 (7th Cir. 1995). *See also North. Cent. Ill. Laborers' Dist. Council*

---

[1] As Plaintiff filed his motion on March 7, 2022, his motion is timely.

*v. S.J. Groves & Sons Co., Inc.*, 842 F.2d 164, 168 (7th Cir. 1988)(describing a Rule 60(b) ruling as "discretion piled upon discretion"). Rule 60(b) permits a court to relieve a party from an order or judgment based on such grounds as mistake, surprise or excusable neglect by the movant; fraud or misconduct by the opposing party; a judgment that is void or has been discharged; or newly discovered evidence that could not have been discovered within the 28-day deadline for filing a Rule 59(e) motion.

Plaintiff reasserts that Defendant Chapman failed to see him until November 2019, despite his August 20, 2019 referral. (Doc. 148, p. 2). Plaintiff also claims that his cavity was extracted, rather than filled; however, he does not assert that this was due to Defendant Chapman's alleged lack of care. *Id*. Furthermore, Plaintiff states the Court's decision which relied on Defendant Chapman's x-rays of Plaintiff's jaw is inaccurate because x-rays only show fractures or dislocations, rather than cavities. *Id*. Plaintiff further asserts that Defendant Chapman did not state in his interrogatories that Plaintiff's condition was not a serious medical need. *Id*. Finally, Plaintiff argues that Defendant Chapman had notice of the grievances Plaintiff filed about his treatment, supporting his claim for retaliation. *Id*. Because Plaintiff's arguments rely on factual propositions, the Court finds that they are most similar to the manifest error of fact standard outlined in Rule 59(e).

## ANALYSIS

### I. Plaintiff's supplementary motions

As an initial matter, the Court strikes as redundant and immaterial Plaintiff's motions to supplement or to advise the Court. (Doc. 151, 153, 154). Under Federal Rule of

Civil Procedure Rule 12(f), the Court may, *sua sponte* or on motion, strike "redundant, immaterial, impertinent, or scandalous matter" from a pleading. *See Kreher v. Polaris Industries, Inc.*, Case No. 20-cv-126-DWD, 2020 WL 7263285, at *3 (S.D. Ill. Dec. 10, 2020) (internal citations omitted). Rule 12 is intended to avoid unnecessary expenditures of time and money by removing material irrelevant to the matter of controversy. *See Miller v. PAM Transport Inc.*, Case No. 19-cv-242-JPG-GCS, 2019 WL 4962954, at *2 (S.D. Ill. Oct. 8, 2019) (internal citations omitted). However, motions to strike are generally disfavored. *Id*. A moving party must therefore show prejudice in order to succeed on a motion to strike. *Id.* (internal citations omitted). The Court should grant a motion to strike when the material at issue bears no logical relation or connection to the subject matter of the controversy and causes significant prejudice to one or more of the parties. *Id*. (internal citations omitted); *see also Talbot v. Robert Matthews Distributing Co.*, 961 F.2d 654, 665-666 (7th Cir. 1992).

Though a disfavored remedy, striking Hoskins's repetitive supplements is appropriate in this case. Hoskins does not explain why he failed to submit the grievances he now relies on during the appropriate time frame for discovery, or when responding to Defendant Chapman's motion for summary judgment. In fact, he fails to explain why he could not bring this evidence when he filed his motion for reconsideration. By failing to timely present this evidence, Hoskins has deprived Defendant Chapman of the opportunity to appropriately address these claims either in a motion for summary judgment or in a reply to Hoskins's response. Furthermore, by filing his motions to supplement sporadically, with one new motion to supplement every week, Hoskins has

deprived Defendant Chapman of the opportunity to reply to his motions to supplement in one response.

Furthermore, the Court finds that these supplements are both redundant and immaterial. The grievances Hoskins relies on only reiterate his claims that he was not timely seen by Defendant Chapman. However, as Defendant Chapman points out, Plaintiff's timeline is not supported by the evidentiary record. (Doc. 155, p. 2). Though Plaintiff may be internally consistent when claiming Defendant Chapman did not see him until November 2019, Plaintiff's medical records show that Defendant Chapman actually saw him on October 3, 2019. (Doc. 106, p. 2). Plaintiff's grievances, and his record showing a referral to Defendant Chapman, are therefore immaterial in this case. Because Plaintiff's supplements are immaterial, redundant, and highly prejudicial to Defendant Chapman, the Court STRIKES the motions containing these supplements. (Doc. 151, 153, 154).

The Court further wishes to make clear to Hoskins that continuous frivolous filings are not the proper procedure for directing the Court's attention. For example, Hoskins filed a motion for the Court to Provide and Advise on March 21, 2022, reiterating his desire to appeal if the motion for reconsideration is denied. (Doc. 156). This motion is duplicative of his motion for the court to provide plaintiff with notice of appeal and instructions. (Doc. 149). In between these filings, Hoskins also filed an additional three motions to supplement, all approximately one week apart. (Doc. 151, 153, 154). For every document the Hoskins files, the Court *must* allow the Defendant Chapman time to respond. Often before that response time has run, Hoskins has already filed another

document, which triggers another response period. The Court was simply waiting for a lull in filings to address everything before it.

Hoskins's case is not the undersigned's only responsibility. In fact, the undersigned is currently responsible for approximately 115 civil cases aside from Hoskins's case, in addition to a large number of criminal matters during criminal duty months, and other miscellaneous tasks such as settlement conferences. The Court understands that one of the key principles it should adhere to is to resolve cases in a just, speedy, and inexpensive fashion. *See* FED. R. CIV. PROC. 1. The undersigned does everything possible to manage his caseload as efficiently and speedily as possible. But, by inundating the Court with motions and other documents, Hoskins is actually working against his own interest in moving his case along more quickly. The Court is forced to spend significant time reviewing Hoskins's handwritten submissions, which are often rambling and/or immaterial. It is also always extremely difficult to read (to the point of being illegible, at times). Quite simply, these filings bog the Court down and divert the Court's attention and resources from issuing the decisions necessary to allow this matter to progress.

Furthermore, Hoskins knows better than to engage in this type of behavior. He is not a first-time litigant. He has furthermore been cautioned at least once before about constantly filing redundant and duplicative motions. *See Hoskins v. Dilday, et al.,* SDIL Case No. 16-334 (Doc. 31); *Hoskins v. Swisher,* SDIL Case No. 20-cv-395-MAB (Doc. 160). The Court is not required to endure repetitive and frivolous filings by a pro se plaintiff, which tax the limited resources of the Court and unfairly consume time the Court needs

to serve other litigants seeking relief in the federal court system. *See, e.g., Alexander v. United States*, 121 F.3d 312, 315-316 (7th Cir. 1997)(applying monetary sanctions for duplicative filings in a habeas case). Hoskins is hereby warned that if he continues to inundate the Court with filings, the Court will issue whatever sanction may be warranted, which could include a monetary fine, a filing prohibition, or dismissal of his case, in order to deter him from continuing his abusive filing practices. Hoskins is urged to proceed mindfully and to limit his filings to necessities that truly require a court decision. Such an exercise of personal discretion by the Hoskins will assist the Court in addressing the heart of his concerns in a more expeditious fashion. As Hoskins's motion to Provide and Advise is duplicative, the Court therefore also strikes this motion. (Doc. 156).

## II. Plaintiff's motion for reconsideration

Hoskins's arguments in support of his motion for reconsideration are not well taken. Hoskins first asserts that he was referred to Defendant Chapman in August 2019, but not seen until November 2019. (Doc. 148, p. 2). He further claims that the October 2019 visit to Defendant Chapman is immaterial because Defendant Chapman saw him on referral, rather than of his own volition. *Id*. Accordingly, Hoskins argues that these facts show that Defendant Chapman was deliberately indifferent to Hoskins's pain because he delayed Hoskins's treatment. *Id*.

Delays in treating painful medical conditions may support a claim under the Eighth Amendment even when the underlying condition for which treatment is sought is not life-threatening. *See Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997). An

inexplicable delay in treatment which serves no penological interest may support an inference that prison officials were deliberately indifferent to an inmate's serious medical needs. *See Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016)(citing *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008)). *See also Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007)(holding that defendants were deliberately indifferent when they denied the plaintiff treatment for his dislocated finger for two days). When determining whether a delay indicates deliberate indifference, courts consider the seriousness of the condition for which treatment is delayed and the ease of providing treatment for that condition. *Id.* Furthermore, in order to predicate an Eighth Amendment claim on a delay in treatment, a plaintiff must show that the delay exacerbated the injury or unnecessarily prolonged pain. *See Williams v. Liefer*, 491 F.3d 710, 716 (7th Cir. 2007).

A significant delay in treatment clearly supports finding deliberate indifference when the materials for treatment are widely available and easily obtainable. *See, e.g.*, *Miller v. Campanella*, 794 F.3d 878, 880 (7th Cir. 2015)(finding that the defendants' delay in providing the plaintiff with over-the-counter pills to treat gastro-esophageal reflux disease for two months demonstrated deliberate indifference). Even a short delay may be indicative of deliberate indifference when an inmate's condition causes considerable pain. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). For example, in *Rodriguez*, prison staff incorrectly administered an intravenous line in the plaintiff's arm. *Id.* at 819-820. During the plaintiff's four-day hospital stay, staff treated plaintiff's resulting pain by pushing the intravenous line further into the plaintiff's arm and providing him with an ice pack. *Id.* at 832. As a result of the delay in treatment, the

plaintiff developed a serious and contagious infection. *Id*. The Seventh Circuit found that, given the alleged facts, the plaintiff sufficiently stated a claim under the Eighth Amendment to survive a motion to dismiss. *Id*. In contrast, a similar delay for a less painful condition may be tolerated under the Eighth Amendment. *See, e.g., Gutierrez*, 111 F.3d at 1374 (finding that the plaintiff could not survive summary judgment when officials delayed treating a mild cyst infection for six days).

Courts recognize that "delays are common in a prison setting with limited resources[.]" *Petties*, 836 F.3d at 730. Prison officials, however, must provide treatment sufficient to meet the "civilized minimum of public concern for the health of prisoners." *Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir. 1999). This civilized minimum is "a function of both objective need and of cost." *Id*. When the cost of providing treatment is low, the failure to do so is especially indicative of deliberate indifference. *See Id.* For instance, in *Gil v. Reed*, the defendant denied the plaintiff his pain medication, although that medication had been prescribed and dispensed before the plaintiff requested it. 381 F.3d 649, 662 (7th Cir. 2004). The prescribed antibiotic was necessary to treat a severe infection; though the plaintiff obtained the medication the following day, the Seventh Circuit found the delay demonstrated deliberate indifference. *Id*. Similarly, in *Wynn v. Southward*, the plaintiff repeatedly informed prison officials that he needed his heart medication "immediately" in order address a heart flutter and substantial chest pains. 251 F.3d 588, 594 (7th Cir. 2001). Citing to *Ralston*, the Seventh Circuit noted that the defendants' delay in providing the plaintiff's necessary heart medication supported a claim for deliberate indifference under the Eighth Amendment. *Id*.

Even if Defendant Chapman saw Hoskins on referral in October 2019, this visit still weighs against finding an unconstitutional delay in medical treatment. Defendant Chapman points out that he regularly took action to alleviate Hoskins's complaints of tooth pain when he saw Hoskins for treatment. (Doc. 106, p. 12). For example, when Hoskins saw Defendant Chapman on October 3, 2019, Defendant Chapman ordered Hoskins a mouth guard to alleviate his pain and ordered an x-ray of his jaw. *Id*. On November 12, 2019, Defendant Chapman found that Hoskins had a cavity in tooth nineteen, but informed him that the cavity was only visible from the x-ray, indicating that it would not cause significant pain. *Id*. Defendant Chapman then exercised his medical judgment to place Hoskins on the waiting list for a filling. *Id*. However, as the waiting list for dental treatment was full during November 2019, with Defendant Chapman seeing approximately fifteen to sixteen inmates per day for treatment, Defendant Chapman was not able to fill Hoskins's cavity immediately. *Id*. at p. 13 n.2. Defendant Chapman's ability to quickly treat Hoskins's cavity was further limited by the imposition of COVID-19 precautionary measures. When Defendant Chapman saw Hoskins in March 2020, he was not able to treat Hoskins's cavity per the safety regulations in place at the time because Hoskins did not appear to have symptoms severe enough to constitute an emergency. *Id*. at p. 12. Each time Defendant Chapman saw Hoskins, he provided him medical care. Further, Defendant Chapman reasonably saw Hoskins within a two-month timeframe, when Hoskins did not have emergent pain. Accordingly, this evidence does not warrant a reconsideration of the Court's original Order.

Hoskins also asserts that his extraction while he was incarcerated at Dixon shows that he had significant pain. (Doc. 148, p. 2). However, this evidence does not suggest that the Court's evaluation of Hoskins's treatment is insufficient. In order to succeed on a claim for deliberate indifference to a serious medical need against a physician, a plaintiff must show that the defendant-physician's decision was "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate the person responsible did not base the decision on such judgment." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). Even if there is evidence that at least some medical professionals would have chosen to pursue a different course of treatment, this, standing alone, is insufficient to defeat summary judgment. *See Steele v. Choi*, 82 F.3d 175, 179 (7th Cir. 1996). Because a physician's treatment decisions are necessarily predicated on each individual patient's symptoms and medical necessities, delineating between acceptable differences of opinion and deliberate indifference often escapes a bright line analysis. *See Petties*, 836 F.3d at 729. The few instances in which courts do approach a bright line analysis includes when a physician ignores a specialist's recommendations, *see Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011); when a physician fails to follow existing protocol, *see Petties*, 836 F.3d at 729 (citing *Mata v. Saiz*, 427 F.3d 745, 757 (10th Cir. 2005); and when a physician chooses an easier course of treatment even when that treatment is less effective than other available options, *see Walker v. Peters,* 233 F.3d 494, 498 (7th Cir. 2000). Inherent to each of these situations is the defendant physician's ability to make a decision impacting the plaintiff's medical treatment and care. *Cf. Perez v. Fenoglio*, 792 F.3d 768, 779 (7th Cir. 2015)(acknowledging that showing "someone else was responsible" could support

granting summary judgment after discovery); *Walker v. Benjamin*, 293 F.3d 1030, 1038 (7th Cir. 2002)(upholding a decision granting summary judgment when the plaintiff failed to show that delay between the initial visit, diagnosis and specialist's treatment were within the defendant physician's control). Hoskins provides no evidence that Defendant Chapman failed to follow a specialist's advice, existing protocol, or that he took a less effective approach without reason. Accordingly, this evidence also fails to support reconsideration.

Third, Hoskins claims that x-rays only show fractures or dislocations. However, this evidence cannot support reconsideration because it is not accurate. As a medical expert, Defendant Chapman explained that he used x-rays to identify and determine the extent of the cavity on Hoskins's tooth nineteen. (Doc. 24, Exh. 2). Hoskins provides no medical expertise to claim to the contrary, and the Court will not credit Hoskins's unsubstantiated claims over Defendant Chapman's medical expertise.

Hoskins next asserts that Defendant Chapman failed to state in his interrogatories that Hoskins's condition was not a serious medical need. (Doc. 148). However, Defendant Chapman *does* state in his interrogatories that Hoskins had a "chipped tooth and non-observable cavity [which] did not require emergent treatment nor did they appear to be painful as these conditions typically do not cause pain unless they become infected or damage the nerve root, which they were not." (Doc. 148, p. 12). As Hoskins's claim is factually incorrect, it likewise does not support reconsideration.

Finally, Hoskins argues that Defendant Chapman's failure to pursue the affirmative defense of exhaustion of remedies suggests that he was on notice that Hoskins

had filed grievances against him, and therefore had motive to retaliate against him. (Doc. 148). However, this logic fails. The element of notice refers to the prison administration's notice that an inmate has described a potential concern, rather than the notice of the defendant that an inmate has a problem with them. *See* (Doc. 155, p. 4). Furthermore, the Court found that Hoskins failed to demonstrate that there was a causal connection between Hoskins's grievance and Defendant Chapman's conduct. (Doc. 144, p. 18). This evidence does not indicate otherwise. Accordingly, reconsideration of the Court's original Order is not warranted.

If Hoskins wishes to appeal the dismissal of this case, his notice of appeal must be filed with this Court within thirty days of the entry of judgment or order being appealed from. *See* FED. R. APP. PROC. 4(a)(1)(A). If the appeal is frivolous, this Court will not grant him leave to proceed *in forma pauperis* ("IFP") in an appeal from the dismissal of this action. Instead, he will be liable for the $505.00 appellate filing fee. *See* FED. R. APP. PROC. 3(e); 28 U.S.C. 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-726 (7th Cir. 2008). The present motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e) motion has stopped the 30-day clock for filing a notice of appeal (the clock will start again once the undersigned rules on the motion). *See* FED. R. APP. PROC. 4(a)(4). However, that clock restarts as of the filing of this order. Accordingly, Hoskins may move to appeal on or before **May 20, 2022.**

## CONCLUSION

For the above stated reasons, Hoskins's motion for reconsideration (Doc. 148) is **DENIED.** His motion for the Court to provide information regarding an appeal (Doc.

149) is **MOOT.** Finally, the Court **STRIKES** Hoskins's supplemental motion for reconsideration (Doc. 151), his second supplemental motion for reconsideration (Doc. 153), his motion for the Court to Consider (Doc. 154), and his motion for the Court to Provide and Advise (Doc. 156).

**IT IS SO ORDERED.**

**DATED: April 20, 2022.**

Digitally signed by Judge Sison 2
Date: 2022.04.20 15:22:33 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**